UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

CASE NO. **2:11-cv-459**

STACEY SUE BERLINGER a/k/a STACY BERLINGER O'CONNOR,
BRIAN BRUCE BERLINGER, and
HEATHER ANNE BERLINGER, as Beneficiaries
to the Rosa B. Schweiker Trust and all of its related trusts,

      Plaintiffs,
v.

WELLS FARGO BANK, N.A., as Successor to
WACHOVIA BANK, N.A., as Corporate Trustee to
The Rosa B. Schweiker Trust, and all of its related trusts,

      Defendant/Third Party Plaintiff,
v.

BRUCE D. BERLINGER and SUE CASSELBERRY.

      Third Party Defendants.
_____/

## MOTION FOR PROTECTIVE ORDER AND INCORPORATED MEMORANDUM OF LAW

Third Party Defendant, SUE CASSELBERRY ("Sue"), through the undersigned counsel, files the instant motion pursuant to Federal Rules of Civil Procedure 26 and 30 stating:

    1.    On October 27, 2014, Plaintiffs took the deposition of Third Party Defendant, [Roberta] Sue Casselberry.[1]   Exhibit 1.   The instant motion arises from that deposition.

    2.    This case originates from the 2007 divorce of Sue and her former husband/Third Party Defendant, Bruce D. Berlinger ("Bruce"), which final judgment of divorce incorporated

---

[1]    The instant motion would have been filed sooner but for the flurry of activity in this action in the last week coupled with the deadline for filing dispositive motions, which was November 3, 2014, until the Court on that date extended that deadline. [D.E. 288].

their marital settlement agreement. [Exhibit 1 at Exhibit E]. Their final judgment of dissolution of marriage provided, *in para materia*, for Bruce's payment to Sue of a lump sum equitable distribution payment and $16,000 per month in permanent alimony. *Id.* Their three children are the Plaintiffs who, in the course and scope of their father's efforts to avoid his court-ordered obligations to their mother, have sued the former corporate co-trustee of certain family trusts, of which Bruce is the primary beneficiary, alleging in part that the trusts improperly made distributions and/or investments to enable Bruce to pay his equitable distribution payment and alimony payments. [D.E. 93].

    3.    Pending before the Court are the following limited claims:

        a.  Plaintiffs' claims for breach of trust and breach of fiduciary duty against Defendant, Wells Fargo Bank, N.A. ("Wells Fargo") for alleged improper distributions and investment decisions while Wells Fargo was the corporate co-trustee of certain family trusts [D.E. 93];

        b.  Defendant's third party claims against Sue for her alleged unjust enrichment by receipt of certain trust distributions that Plaintiffs claim to have been improper;

        c.  Defendant's third party claims against Bruce for contribution as a co-trustee as well as his unjust enrichment by his receipt of the benefit of the distributions and investment decisions that Plaintiffs claim to have been improperly made; [D.E. 60];

        d.  Sue's cross-claim against Bruce for unjust enrichment (i.e. that he received real property in exchange for the equitable distribution payment, as well as credit for alimony payments made, which Defendant seeks Sue to Wells Fargo if it

has to repay the same to the trusts; and

e. Sue's counterclaim against the Plaintiffs for the breach of their contracts wherein they agreed to execute such documents, and join in any actions, necessary to accomplish the terms of the Sue and Bruce's marital settlement agreement, which would include the payment of the lump sum equitable distribution and alimony that are the center of this litigation.

4. During the course of Sue's deposition, Plaintiffs' counsel made inquiry into matters well beyond the scope of the pleadings before the Court and clearly for the purpose of embarrassing and upsetting the deponent including but not limited to her first childless marriage during which she had a miscarriage as well as the child she gave up for adoption long before her marriage to Bruce (which child eventually located her birth mother).[2]  Exhibit 1 at 49-52.[3]  This unnecessary inquiry upset the deponent, Sue, to the point of her being in tears.   Exhibit 1 at 52.

5. Thereafter, to further harass, embarrass and oppress Sue, Plaintiffs' counsel again sought to make inquiry into matters clearly irrelevant to the pleadings pending before the Court, this time inquiring as to the extent of Sue's present assets.  Exhibit 1 at 61.  Sue's counsel

---

[2] As the Court is aware, the Plaintiffs and the Third Party Defendants are not strangers to each other such that it may be suggested by Plaintiffs that there counsel was simply making innocent inquiry into unknown facts to discover the same.  Rather, Plaintiffs and the Third Party Defendants comprise a nuclear family, the areas inquired into were well known to Bruce as a result of his nearly 30 year marriage to Sue and, given the targeted inquiry into these areas, they were obviously known to Plaintiffs' counsel who represented Bruce in the state court alimony enforcement proceedings and, until recently, was also Bruce's counsel of record in this action.

[3] As a further backdrop against which the Court should view this matter, a detailed account of Bruce's efforts to avoid paying alimony through various legal machinations largely orchestrated by the same attorney he obtained to represent Plaintiffs in this action, and the odyssey upon which Sue has been forced to embark to enforce alimony, is set forth in Berlinger v. Casselberry, 133 So. 3d 961 (Fla. 2 DCA 2013).

objected that the area of inquiry was not relevant to the pleadings before the Court and, based upon Plaintiffs' counsel's failure to provide a good faith basis as to why such inquiry was relevant to this action, instructed Sue not to answer on the basis that such inquiry was not relevant and was intended only to harass, cause undue hardship and further emotional distress to Sue who has been going through an arduous alimony battle in the state family courts with her former husband and the inquiring attorney.   Exhibit 1 at 61-64.

      6.      Sue seeks protective relief from having to answer the question of what her present assets are.

## MEMORANDUM OF LAW

      Federal Rule of Civil Procedure 26 (b) governs the scope of discovery and Rule 26 (c) provides that, for good cause, the Court can issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.  Federal Rule of Civil Procedure 30 (d) provides, in pertinent part, that at "any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party."  Courts have considered the following factors in determining the existence of good cause for a protective order: (a) whether the information is being sought for a legitimate purpose, and (b) whether disclosure will violated any privacy interest. <u>Pansy v. Borough of Stroudsburg</u>, 23 F.3d 772, 787–791 (3rd Cir. 1994).   All that is necessary is an injury to legitimate interests in privacy. <u>Pearson v. Miller</u>, 211 F.3d 57, 72–73 (3rd Cir. 2000).   A party's privacy interests of their personal financial matters outweighs the interests of having material being produced by that party where the

4

information sought is irrelevant and a protective order should be entered. See e.g., Groce v. Claudat, 2012 WL 1831574 (S.D. Cal. 2012). "[T]he disclosure of personal financial information may cause irreparable harm to a person forced to disclose it, in a case in which the information is not relevant." Friedman v. Heart Inst. of Port St. Lucie, 863 So.2d 189, 194 (Fla.2003) (quoting Straub v. Matte, 805 So.2d 99, 100 (Fla. 4th DCA 2002)).

Here, after having already brought Sue to tears by inquiry into such private and irrelevant matters as Sue's childless marriage prior to Bruce[4] and the child Sue gave up for adoption long before meeting Bruce, Plaintiffs' counsel asked Sue, "What do have presently by way of assets?" Exhibit 1 at 61.

At bar, there are no claims for punitive damages against Sue. In fact, the only claim for damages against Sue is that for an unjust enrichment claim by Wells Fargo whereby they seek repayment of the amounts distributed to Sue in the event Plaintiffs are successful in proving that Wells Fargo improperly made those distributions. D.E. 60, at Count III. The amount of Wells Fargo's claimed damages against Sue, if any, would be the amount of the distributions Plaintiffs alleged Wells Fargo improperly made to Sue from the trusts between the 2007 divorce and February 2011 when Wells Fargo was removed as a co-trustee of the trusts. Sue's assets in 2014, i.e. three years later, are irrelevant to the damages Wells Fargo's claims in its action for unjust enrichment against Sue.

Similarly, Sue's present assets are not relevant her damages claimed in her counterclaim

---

[4] While Plaintiffs' counsel asserted at Sue's deposition that his inquiry into Sue's prior marriage was relevant to exploring the validity of her marriage to Bruce, Exhibit 1 at 50-51, there has been no claim made questioning the validity of Bruce and Sue's marriage in this action by any party (nor, for that matter, has there been such a claim made in the state court alimony enforcement proceedings).

and inquiry into the same was not reasonably calculated to lead to the discovery of admissible evidence. Rather the inquiry was to invade Sue's privacy and to cause her further her embarrassment, oppression and undue burden (again bringing the witness to tears as should have been, and likely was, expected by Plaintiffs' counsel given his existing knowledge of the long length of time since Bruce ceased paying alimony, the enormous legal expenses Sue has been forced to incur in her efforts to enforce Bruce's obligations and the obvious economic strain of the same placed upon Sue).[5]

Following the question posed, Sue's counsel objected and made a good faith inquiry to Plaintiffs' counsel as to how Sue's assets were relevant to the instant proceedings such that the privacy of her financial affairs (assets) should be violated and she should be subjected to the embarrassment and oppression of such an inquiry. Exhibit 1 at 62. Plaintiffs responded that Sue present assets are relevant to the issue of damages *claimed* by Sue in her counterclaim. It is worth noting that Plaintiffs, neither at this point in the deposition nor any time prior, *had even inquired of Sue what damages she was claiming* so as to make that logical leap. In fact, Sue submits that her present assets are not relevant to her cause of action or damages claimed in her counterclaim. As this was the only basis upon which Plaintiffs contended that Sue's present assets were relevant to

---

[5] In the course of assisting Bruce's avoidance of alimony and burying Sue in legal expenses, Plaintiffs' counsel initiated 6 different appellate proceedings against Sue arising from the State court alimony enforcement proceedings, to wit: Presley Law and Associates, P.A. v. Casselberry, 117 So. 3d 1094 (Fla. 2 DCA 2013) (petition for certiorari denied); SunTrust Bank v. Casselberry, 117 So. 3d 1095 (Fla. 2 DCA 2013) (petition for certiorari denied); Berlinger v. Casselberry, 119 So. 3d 1254 (Fla. 2 DCA 2013)(appeal dismissed); Inglis v. Casselberry, 137 So. 3d 389 (Fla. 2 DCA 2013) (affirmed); Berlinger v. Casselberry, 133 So. 2d 961 (Fla. 2 DCA 2013) (affirmed); and Presley Law and Associates, P.A. v. Casselberry, 2014 WL 4851734, ___ So. 3d ___ (Fla. 2 DCA October 1, 2014)(petition for certiorari granted without prejudice to evidentiary hearing being conducted on remand).

this action, it was determined that such inquiry should not be permitted and that Sue should bring the question at issue to the Court's attention, as she has by the instant motion.[6]

Plaintiffs assert that Sue's *present* assets are relevant because the damages she is permitted to claim at trial in her counterclaim are limited to the amount that can *presently* be demonstrated that Wells Fargo would, *after trial*, collect on any judgment Wells Fargo may be awarded against Sue. Exhibit 1, at 61-62. It defies logic that Sue's claim for damages *at trial* are dependent upon something that will not occur until *after the trial and entry of judgment against her*. Assuming *arguendo* that Sue's damages in her counterclaim are in some way dependent upon the amount of the judgment awarded to Wells Fargo against her, the same would still not make her *present* assets relevant and inquiry into the same reasonably calculated to lead to the discovery of admissible evidence. The amount that Wells Fargo claims against her in its action for unjust enrichment (i.e. the amount Sue allegedly unjustly received from Wells Fargo as a result of its violation of the family trusts as alleged by Plaintiffs) is not dependent upon any present assets Sue may or may not have. Moreover, her present assets are not relevant to her damages resulting from Plaintiffs' breach of contract, which damages would include the amount of attorney's fees and costs she has and will continue to incur as well as the amount of alimony she has not received, all as a direct result of Plaintiffs' breach of their contract to cooperate with the accomplishment of the terms of their parents' marital settlement agreement.

At the deposition, Plaintiffs asserted that support for the relevancy of Sue's present assets

---

[6] This is not the first time that Plaintiffs' counsel's oppressive and inappropriate conduct during the discovery phase of this action has been brought to the Court's attention. See e.g. D.E. 279.

is found in First Baptist Church of Cape Coral, Florida, Inc., v. Compass Construction, Inc., 115 So. 3d 978 (Fla. 2013). Exhibit 1 at 63. Sue submits that Plaintiffs misreads the application and holding of First Baptist and it actually has no application to the instant case (except possibly the opposite application to that suggested by Plaintiffs). In fact, that portion of the First Baptist opinion upon which Plaintiffs purportedly relied, i.e. that portion in which citation was made to Dade County School Bd. v. Radio Station WQBA, 731 So. 2d 638 (Fla. 1999), was the lone dissent.

In First Baptist, the Florida Supreme Court addressed the validity of an alternative fee clause in a fee agreement. Id. at 979. Compass Construction, Inc. ("Compass") and First Baptist were named as defendants in a lawsuit arising from a construction accident and First Baptist cross-claimed against Compass for contractual indemnification. Id. After First Baptist prevailed against the plaintiff in the main action and on its cross-claim for indemnification against Compass, the dispute centered on what hourly rate should be used to compute that amount of attorney's fees to which First Baptist is entitled as part of its indemnification damages. Id. First Baptist had insurance coverage for the main claim. Id. The retainer agreement for the attorney assigned by the insurance company to represent First Baptist provided that its hourly rate would be $90 per hour; however, "[s]hould anyone other than the [insurance company] be required to pay attorney's fees ... the hourly rate for attorney's fees would be $300.00 ..., or such amount as is determined by the [c]ourt, whichever is higher." Id. The trial court ruled that First Baptist could recover, as part of its indemnification damages, the "reasonable fee" as determined by the court, which the trial court ultimately determined upon finding that a reasonable hourly rate was $350 per hour. Id. at 380. Compass argued that the attorney's fees component of the damages on the

indemnity claim should be limited to the lower hourly rate, asserting the same would have been the actual damages incurred by First Baptist if required to pay its own attorneys. The Florida Supreme Court disagreed and held that First Baptist was entitled to damages of attorney's fees computed using the alternative fee provision of the attorney's retainer agreement. Id. at 983-984.

Assuming Sue's counterclaim against Plaintiffs was for indemnification, which it is not, her damages would surely not be dependent upon the amount of Wells Fargo's judgment that could be satisfied from her *current* assets without regard for the balance of Wells Fargo's judgment that would act as a lien against Sue's future acquired property and/or be subject to collection by garnishment of her future earnings. If that were the case, then in any instance where a defendant has insurance coverage, the insurance company would ostensibly be entitled to discovery of their insured's financial condition by claiming that the extent of its coverage should be limited to the amount the plaintiff would collect from the insured but for the insurance coverage. This is a rather nonsensical postulate.

It is clear that Plaintiffs' counsel was using the deposition, at least that portion where inquiry was made into private areas irrelevant to the pleadings before the Court, as an opportunity to further embarrass and oppress Sue to the point of tears. Forcing Sue to disclosure to her former spouse and her children her private financial circumstances, regardless of how great or desperate, serves no purpose other than causing Sue further undue hardship and emotional distress.[7] Moreover, Sue having to answer the inquiry would result in irreparable injury by virtue of the

---

[7] As was established during the deposition, Sue's relationship with the Plaintiffs is strained due to this litigation. She has not met her grandson and Sue could not even attend her son's wedding because Plaintiffs' counsel was going to there. Exhibit 1 at 56. Sue's discomfort in being in a social setting with Plaintiffs' counsel is certainly easy enough to understand after reading the history described in Berlinger v. Casselberry, 133 So. 3d 961 (Fla. 2 DCA 2013).

9

disclosure of her private information she does not wish for her former husband, or the members of his legal team, to have.   It is not difficult to imagine the injury to Sue in how her private financial information would be used and/or exploited by her former husband and Plaintiffs' counsel in seeking to impose upon Sue an unfavorable or undesirable resolution of the case.

Certification of Compliance with M.D., Fla. L. R. 3.01 (g)

I hereby certify that, in accordance with M.D., Fla. L. R. 3.01 (g), the undersigned has conferred with Plaintiffs' counsel via e-mail to address the issues raised in this Motion and counsel for Plaintiffs does not agree to the relief sought in this motion.

WHEREFORE, Third Party Defendant, Sue Casselberry respectfully requests entry of a protective order against having to answer Plaintiffs' question of what present assets she has, and granting such other and further relief as it just and proper.

> BRAVERMAN & HYMOWITZ
> 625 N.E. 3rd Avenue
> Fort Lauderdale, FL 33304
> Tel. (954) 524-0505, ext. 204
> Fax (954) 527-4805
>
> By:   **/s/ Michael A. Hymowitz**
> MICHAEL A. HYMOWITZ, ESQ.
> Florida Bar No. 0061557
> courtservices@abravermanlaw.com
> mhymowitz@abravermanlaw.com
> *Attorneys for Third Party Defendant, Sue Casselberry*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 4th day of November, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmissions of Notices of electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                                   By: /s/ Michael A. Hymowitz
                                                           MICHAEL A. HYMOWITZ, ESQ.
                                                           Florida Bar No. 0061557

## SERVICE LIST

*United States District Court*
*Middle District of Florida*

CASE NO. 2:11-cv-459

| | |
|---|---|
| Amy S. Rubin, Esquire<br>Florida Bar Number: 476048<br>arubin@foxrothschild.com<br>Dori K. Stibolt, Esquire<br>Florida Bar Number: 183611<br>dstibolt@foxrothschildc.com<br>Fox Rothschild LLP<br>222 Lakeview Avenue, Suite 700<br>West Palm Beach, FL 33401<br>Telephone:  (561) 835-9600<br>Facsimile:     (561) 835-9602<br><br>*Attorneys for Defendant Wells Fargo Bank N.A., as Successor to Wachovia Bank, N.A., as Corporate Trustee to the Rosa B. Schweiker Trust, and all of its related trusts* | Michael R. Presley, Esquire<br>Robert M. Presley, Esquire<br>Steven M. Presley, Esquire<br>1200 Corporate Way, Suite 200<br>Wellington, FL 33414<br>Telephone:   (561) 623-8300<br>Facsimile:    (866) 922.0875<br>mpresley@plaa-pa.com<br>rpresley@plaa-pa.com<br>spresley@plaa-pa.com<br>ctnotice@plaa-pa.com<br><br>*Attorney for Plaintiffs Stacey Sue Berlinger a/k/a Stacy Berlinger O'Connor, Brian Bruce Berlinger, Heather Anne Berlinger* |
| Alan Jay Braverman, Esquire<br>ajb@abravermanlaw.com<br>courtservice@abravermanlaw.com<br>Michael A. Hymowitz, Esquire<br>mhymowitz@abravermanlaw.com<br>courtservice@abravermanlaw.com<br>BRAVERMAN & HYMOWITZ<br>625 NE 3rd Avenue<br>Fort Lauderdale, FL 33304<br>Telephone: (954) 524-0505<br>Facsimile: (954) 527-4805<br><br>*Attorneys for Third Party Defendant Sue Casselberry* | Kenneth M. Gordon<br>Law Office of Kenneth M. Gordon<br>525 Northlake Blvd., #1<br>North Palm Beach, Florida, 33408<br>Kmgordon3@gmail.com<br>Telephone: (561) 676-0034<br>Facsimile: (561) 228-0794<br><br>*Attorney for Third Party Defendant Bruce D. Berlinger* |