UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

STACEY SUE BERLINGER, as
Beneficiaries to the Rosa B.
Schweiker Trust and all of
its related trusts aka
Stacey Berlinger O'Connor,
BRIAN BRUCE BERLINGER aka
Stacey Berlinger O'Connor,
and HEATHER ANNE BERLINGER,
as Beneficiaries to the Rosa
B. Schweiker Trust and all
of its related trusts aka
Stacey Berlinger O'Connor,

      Plaintiffs,

v.                                    Case No: 2:11-cv-459-FtM-29CM

WELLS FARGO, N.A. AS
SUCCESSOR TO WACHOVIA BANK,
N.A., as Corporate Trustee
to the Rosa B. Schweiker
Trust, and all of its
related trusts,

      Defendant/Third
      Party Plaintiff

v.

BRUCE D. BERLINGER and SUE
CASSELBERRY,

      Third Party Defendants.

_____

## OPINION AND ORDER

This matter comes before the Court on plaintiffs' Motion for

Summary Judgment (Doc. #360) and Defendant Wells Fargo Bank, N.A.'s

Motion for Final Summary Judgment against Plaintiffs (Doc. #364).

The parties have filed Responses, depositions, a supplement, and other exhibits in support of their respective motions. (Docs. ##359, 378, 379, 380, 381, 383, 384, 457, 477.)

Also before the Court are additional cross-motions for summary judgment: (1) Third Party Plaintiff, Wells Fargo Bank N.A.'s Motion for Final Summary Judgment against Third Party Defendants Bruce D. Berlinger and Sue Casselberry (Doc. #363); (2) Third Party Defendant, Bruce D. Berlinger's Motion for Summary Judgment (Doc. #358); and (3) Third Party Defendant, Sue Casselberry's Motion for Summary Judgment (Doc. #362). The parties have filed Responses, affidavits, and other exhibits in support of their respective motions. (Docs. ##361, 365, 366, 376, 377, 380, 381, 382, 385.)

## I.

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010). A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A court must decide 'whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Anderson, 477 U.S. at 251).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party.  Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010).  However, "if reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999) (quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296-97 (11th Cir. 1983) (finding summary judgment "may be inappropriate where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts")).  "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1315 (11th Cir. 2007).

## II.

Plaintiffs Stacey Sue Berlinger (Stacey), Brian Bruce Berlinger (Brian), and Heather Anne Berlinger (Heather)

(collectively plaintiffs) are the children of Bruce D. Berlinger (Bruce) and Sue Casselberry (Sue). (Doc. #366, ¶ 61.) The current litigation involves three family trusts: the Rosa B. Schweiker Family Trust, the Frederick W. Berlinger Family Trust, and the Rose S. Berlinger Family Trust (collectively the Berlinger Trusts). In their Second Amended Complaint (Doc. #93) plaintiffs assert they are present beneficiaries of the Berlinger Trusts. Plaintiffs assert claims of breach of trust (Count I), breach of fiduciary duty (Count II), and civil theft (Count III) against Wells Fargo N.A. (Wells Fargo) as the former corporate trustee of the Berlinger Trusts. The Court dismissed Count III in a previous Order (Doc. #220) for lack of standing and failure to state a claim. Plaintiffs now move for summary judgment as to the portion of Counts I and II relating to trust distributions for alimony. (Doc. #360.) Wells Fargo moves for summary judgment on Counts I and II in their entirety. (Doc. #364.)

Wells Fargo filed a Third Party Complaint (Doc. #60) against Bruce and Sue, asserting a claim of contribution (Count I) and unjust enrichment (Count II) against Bruce, and a claim of unjust enrichment (Count III) against Sue. Wells Fargo, Sue, and Bruce each now move for summary judgment on the Third Party Complaint. (Docs. #358, 362, 363.)

III.

Resolution of the issues in this case involves an examination of the provisions of various family trusts for four generations of the Berlinger family, going back to 1961. The relevant family tree looks something like this:



A.   **Rosa B. Schweiker Will And Resulting Trust**

On February 2, 1961, Rosa B. Schweiker (Rosa) signed a will (Doc. #93-1) which provided that all her tangible personality other than currency be given to her daughter, Rose S. Berlinger, and provided a token cash amount to another individual. (<u>Id.</u> at §§ 1-2.) The residue of Rosa's estate was to be given to her trustees, in trust (the Rosa Trust). (<u>Id.</u> at § 3.) During Rose's life, the corporate trustee was to pay the Trust income "to such of my

daughter [Rose] and her issue as my corporate trustee selects and in such proportion as it determines without being required to maintain equality among them . . . ." (Id.)   The provision continued that "my corporate trustee shall bear in mind, in allocating income from time to time among my daughter and her issues, that my daughter is the primary object of my bounty and that it is my intention that it shall not be charged with an abuse of its discretion should it pay all of the income to my daughter." (Id.)

The Rosa Trust further provided that upon Rose's death the corporate trustee was to pay the principal of the trust as Rose directed by express reference in her will.  If there was no such express provision in Rose's will, the trustee was to hold all principal in trust in accordance with certain instructions:  During the life of Bruce Berlinger (Rosa's grandson and Rose's son), the trustee was to pay income from the principal "to such of my grandson and his issue as my corporate trustee selects and in such proportion as it determines without being required to maintain equality among my grandson and his issue, . . . ." (Id.)   The provision continued, stating that "my corporate trustee shall bear in mind, in allocating income from time to time among my grandson and his issues, that after the death of my daughter my grandson will be the primary object of my bounty and that it is my intention

that it shall not be charged with an abuse of its discretion should it pay all of the income to my grandson." (Id.)

Among other powers, the Rosa Trust allowed the corporate trustee to invade the principal: "To apply for the benefit of a beneficiary, in such manner as my corporate fiduciary deems appropriate, as much of the principal, the income of which it has authority to pay to the beneficiary or to the income of which the beneficiary is entitled, as, without considering the beneficiary's individual property, it determines is required for his comfortable maintenance . . . ." (Id. at § 6(f).) During Rose's lifetime this invasion of principal was restricted as follows: "[T]he principal shall not be invaded for the benefit of a beneficiary other than my daughter unless my daughter is incapable in my corporate fiduciary's judgment of managing her own affairs and then only for the purpose of enabling such other beneficiary to meet an emergency, such as illness, for the meeting of which funds of his own of a substantial nature are not reasonably available." (Id.) The invasion of principal was also restricted after Rose's death: "My corporate trustee shall be similarly guided as to invasion of principal after the death of my daughter and during the life of my grandson should a question then arise as to invasion of principal for the benefit of a beneficiary other than my grandson." (Id.)

As to investments, the Rosa Trust provided that the Trustee had the additional power "to retain any property and to purchase such real or personal property as they select without being confined to investments legal for trustees and without being under any obligation to diversity investments, to minimize risk, or to produce income . . . ." (Id. at § 6(a).)

The Rosa Trust further directed "[t]hat interests of beneficiaries shall not be subject to anticipation or to voluntary or involuntary alienation, and the protection afforded by this paragraph shall be effective both as to principal and income until actual payment to the beneficiary." (Id. at § 4.) Further, the discretions conferred relating to the allocation of income among beneficiaries, allocations of receipts and disbursements between principal and income, and invasion of principal "shall not be exercised by an individual fiduciary who can derive direct or indict benefit from such exercise." (Id. at § 6.)[1]

## B.   Grandson Bruce's Marriage

On September 23, 1978, Rosa's grandson Bruce Berlinger married Sue C. Casselberry in Orlando, Florida.  Three children

---

[1]While plaintiffs assert that the Rosa Trust precludes "a fiduciary" from exercising discretion relating to allocation of income among beneficiaries, allocation of receipts and disbursements between principal and interest, and invasion of principal (Doc. #360, pp. 4-5), the provision only applies to individual fiduciaries, not corporate fiduciaries. (Doc. 93-1, § 6.)

were born of this marriage, being plaintiffs Stacey, Brian, and Heather Berlinger.  (Doc. #359-1, §§ 1.1, 2.1.)

## C.    **Frederick W. Berlinger Deed Of Trust**

Frederick W. Berlinger (Frederick) was the husband of Rose Berlinger and the father of Bruce Berlinger.  In December, 1988, Frederick transferred certain property to a corporate trustee and himself as trustees to hold in trust according to certain provisions which created three trusts (the Frederick Trust).  (Doc. #93-2.)  First, a Lifetime Trust was created for the benefit of Frederick which was essentially under the complete control of Frederick.  (Id. at § I.)  Second, a Family Trust was to be created after Frederick's death, when the corporate trustee was to set aside $1 million in a separate trust.  (Id. at § II.)  Under this Family Trust, if Frederick's wife Rose survived Frederick, the separate trust was for the primary benefit of Rose.  (Id. at § II.A.)  The Family Trust provided that after the deaths of both Rose and Frederick, "[a]s much of the net income and the principal as my trustee, in my trustee's sole discretion, may from time to time think desirable shall be distributed to such one or more of my descendants in such amounts or proportions as my trustee may from time to time think appropriate . . . ."  (Id. at § II.B.1.)  The trustee was not required to treat the beneficiaries equally or proportionally with regard to income distributions from the trust.  (Id. at § II.B.)

Third, after Frederick's death a Marital Deduction Trust was to be created from the balance of the principal. (Id. at § III.) If Rose survived Frederick, the net income from this Marital Deduction Trust was to be paid to her in installments, along with as much principal as the trustee determined was desirable for Rose's "health, support or maintenance." (Id. at § III.A.) After Rose's death, the principal was to be used to pay any increase in death taxes or administration expenses in Rose's estate caused by an inclusion of a portion of the Marital Deduction Trust. (Id.) The balance of the principal would be paid to one or more of Frederick's descendants on terms Rose appointed by a will, or in the absence of such a valid will provision, was to be held by the trustee subject to certain instructions. (Id. at § III.B.) The relevant instructions were as follows:  After the deaths of both Rose and Frederick, the net income of the Marital Deduction Trust was to be distributed *per stirpes* "from time to time" to Frederick's descendants then living, and "[a]s much of the principal as my trustee, in my trustee's sole discretion, may from time to time think desirable for any person eligible to receive income under subparagraph 1 shall be paid to him or her." (Id. at § III.C.)  The beneficiaries did not have to be treated in the same manner by the trustee.  (Id.)  As to investment power, the Frederick Trust authorized the trustee "[t]o retain and to invest in all forms of real and personal property, without being confined

to investments authorized by a statutory list, without being required to diversify and regardless of any principle of law limiting delegation of investment responsibility by trustees . . . ." (Id. at § XV.A.)

The Deed of Trust also contained a provision that prohibited a beneficiary from transferring his or her interest in income or principal, and prevents creditors of a beneficiary from reaching the trust interest "before actual payment to the beneficiary." (Id. at § XIV.)  The trustee was given expansive powers in addition to those granted by law.  (Id. at §§ XV.A–XV.K.)

### D.   Rose S. Berlinger Revocable Deed Of Trust

On October 17, 1991, Rose S. Berlinger established a Revocable Deed of Trust, which was restated on September 19, 2002, subsequently amended, and finally restated in its entirety on October 18, 2002.  (Doc. #93-3.)  The Deed of Trust created a Living Trust in which the income was distributed to Rose during her lifetime.  Upon Rose's death, the trustee was to pay the expenses of the last illness, funeral expenses, Rose's debts, and death taxes from the trust principal.  The balance of the trust estate was to be held by the trustee as the Rose S. Berlinger Family Trust (the Rose Trust).  This trust provided a lifetime benefit of $200 per week to one of Rose's employees.  The balance of the net income was to be distributed to Bruce, his children and his more remote descendants, in equal or unequal proportions, at

such times as the trustee deems to be in the best interest of such beneficiaries after considering their needs, other income, resources, means of support and any other pertinent circumstances and factors.  The trustee was to distribute so much or all of the principal to Bruce if it was necessary for his support or health in his accustomed manner of living after considering his other income and resources.  Under no circumstances was there to be any distribution of principal to Bruce for any purpose other than his health or support in his accustomed manner of living.  The determination of whether any distribution of principal should occur was to be made exclusively by the trustee.  Additionally, the trustee could distribute so much or all of the principal to or for the benefit of Bruce's children as the trustee in its sole and absolute discretion deemed appropriate for the support, health, education, and general welfare, in equal or unequal amounts after considering their needs, other income, resources, means of support and any other pertinent circumstances and factors.  The Rose Trust was to make no distribution to the children or more remote descendants of Bruce which would discharge any of Bruce's support obligation.  As to investments, the trustee was given the authority to "invest and reinvest" in "other real and personal property, within or without the United States, as the Trustee deems proper without regard to diversification or those investments which are authorized by law for fiduciaries . . . ."  (<u>Id.</u>, Art. XI.C.)  The

Rose Trust also contains a spendthrift clause that prevents the beneficiaries from voluntary or involuntary transferring their interest and protects the beneficiaries' interest from creditor claims. (Id. at Art. XII.B.)

**E.   Bruce's Divorce Settlement**

Bruce and Sue were divorced in 2007 pursuant to a final judgment which incorporated a Marital Settlement Agreement (the MSA) signed by each on September 15, 2007. (Doc. #359-1; Doc. #366, ¶ 61.) The MSA was intended to resolve all issues between the couple, and was irrevocable. (Doc. #359-1, §§ 1.3, 1.7.) Two provisions are relevant to this case. First, the MSA obligated Bruce to pay Sue permanent alimony of $16,000 each month until Sue remarried or either Sue or Bruce died. The parties agreed that this amount could not be modified (Id. at §§ 3.1-3.7.) Second, the property settlement provided Bruce would take all right, title and interest in what was subsequently identified as 550 Banyan Blvd., Naples, Florida (among other property) and was required to make three payments totaling $2 million to Sue as her equitable distribution of marital assets. (Id. at §§ 4.1-4.8.) Neither plaintiffs nor Wells Fargo were parties to the MSA.

**F.   Wells Fargo Becomes Corporate Trustee**

The parties agree that Wachovia Bank, N.A. acted as the corporate co-trustee for the three Berlinger Trusts in 2007, 2008, 2009, and part of 2010. On March 20, 2010, Wachovia Bank merged

with and into Wells Fargo, and Wells Fargo served as corporate co-trustee for the three Berlinger Trusts for the remaining part of 2010 until March, 2011.

**IV.**

The Second Amended Complaint (Doc. #93) asserts a claim for Breach of Trust (Count I) and an overlapping claim for Breach of Fiduciary Duty (Count II).  Plaintiffs assert that Wells Fargo violated its duties as corporate trustee in three areas:  (1) making distributions of principal and/or income to Bruce from the Berlinger Trusts which were used by Bruce to pay his alimony obligations to Sue; (2) authorizing the Rosa Trust to purchase a one-third interest in residential property located at 550 Banyan Blvd for $2 million as a trust investment when the fair market value was less than $700,000; and (3)  failing to diversify Berlinger Trust assets and abusing its discretion in its investment decision-making as to Berlinger Trusts assets.

Plaintiffs seek summary judgment as to the alimony portion of these claims.  Plaintiffs assert that Wells Fargo had the duty to refrain from making discretionary distributions to Bruce to pay his alimony to Sue, and that Wells Fargo breached its fiduciary duty under the Berlinger Trusts by making such distributions. (Doc. #93, pp. 1-2, 7.)  Wells Fargo seeks summary judgment on all components of the counts, asserting that as a matter of law its

14

conduct was appropriate and in accordance with the terms of the Berlinger Trusts. (Doc. #364, pp. 4-5.)

## A.    Trustee's General Legal Obligations

The Florida Trust Code provides that "[u]pon acceptance of a trusteeship, the trustee shall administer the trust in good faith, in accordance with its terms and purposes and the interests of the beneficiaries, and in accordance with this code." Fla. Stat. § 736.0801. "[A] violation by a trustee of a duty the trustee owes to a beneficiary is a breach of trust." Id. § 736.1001(1). The elements of a claim for breach of trust or fiduciary duty under Florida law are: "(1) the existence of a fiduciary duty; (2) the breach of that duty; and (3) damage proximately caused by that breach." Treco Int'l S.A. v. Kromka, 706 F. Supp. 2d 1283, 1288 (S.D. Fla. 2010). See also Gracey v. Eaker, 837 So. 2d 348, 353 (Fla. 2002) ("[t]he elements of a claim for breach of fiduciary duty are: the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages."). Thus, to the extent they are based on the same conduct, plaintiffs' Count I claim for breach of fiduciary duty is redundant of the Count II claim for breach of trust. Figel v. Wells Fargo Bank, N.A., No. 10-CV-60737, 2011 WL 860470, at *2 (S.D. Fla. Mar. 9, 2011); Durden v. Citicorp Trust Bank, FSB, No. 07-CV-974, 2009 WL 6499365, at *12 (M.D. Fla. Aug. 21, 2009).

The specific obligations of a trustee are found in the trust documents. "From the trust, the trustee derives the rule of his conduct, the extent and limit of his authority, the measure of his obligation." Jones v. First Nat'l Bank, 226 So. 2d 834, 835 (Fla. 4th DCA 1969); see also Fla. Stat. § 737.401. "[T]he trustee can properly exercise such powers and only such powers as (a) are conferred upon him in specific words by the terms of the trust, or (b) are necessary or appropriate to carry out the purposes of the trust and are not forbidden by the terms of the trust." Restatement (Second) of Trusts § 186 (1959); see also id. § 164; In re Celotex Corp., 487 F.3d 1320, 1328 (11th Cir. 2007). To determine the extent of a trustee's authority as defined by the trust instruments, the court independently interprets the terms of the trust documents. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 112 (1989) ("As they do with contractual provisions, courts construe terms in trust agreements without deferring to either party's interpretation.").

"A trustee has wide discretion in the exercise of his power and a court will not interfere unless he abuses his discretion." State of Del. ex rel. Gebelein v. Belin, 456 So. 2d 1237, 1241 (Fla. 1st DCA 1984). "A trustee who acts in reasonable reliance on the terms of the trust as expressed in the trust instrument is not liable to a beneficiary for a breach of trust to the extent the breach resulted from the reliance." Fla. Stat. § 736.1009.

**B.   Trust Distributions Used To Pay Alimony**

The Second Amended Complaint alleges that Wells Fargo paid and distributed principal and/or income from the Berlinger Trusts to Sue for alimony owed by Bruce.[2]   (Doc. #93, ¶¶ 28-30.) Plaintiffs now argue that distributions to Bruce to be used for alimony payments violated the spend-thrift provisions of each Berlinger Trust documents.   Wells Fargo responds that such distributions were proper under the terms of the Berlinger Trust documents.   The Court agrees with Wells Fargo.

At all relevant times, Bruce was the primary beneficiary of the Berlinger Trusts, and made requests to Wells Fargo for the distributions from the Berlinger Trusts at issue in this case. Wells Fargo reviewed and approved Bruce's requests for distributions based on budgets Bruce submitted to Wells Fargo. Wells Fargo made distributions directly to Bruce, who used portions to fulfill his MSA obligations.   The distributions to Bruce apparently came from both the income and principal of all three Berlinger Trusts.   At least some of the budgets indicated that

---

[2] While the Second Amended Complaint asserts that the Berlinger Trusts made monthly payments of $16,000 directly to Sue (Doc. #93, ¶¶ 28-30), there is no evidence which supports this assertion. Rather, the undisputed evidence establishes that trust money was paid directly to Bruce, who then used a portion to meet his $16,000 monthly obligation to Sue.   Plaintiffs' summary judgment motion concedes that Wells Fargo made "discretionary distributions to Bruce Berlinger to pay for his alimony to Sue Casselberry . . . ." (Doc. #360, p. 1.)

Bruce's expenses included $16,000 in monthly alimony payments to Sue.   From March, 2008 through December, 2010 Bruce utilized approximately $544,000 of the distributions authorized by the Corporate Trustee to fulfill his alimony obligations.   It is a reasonable inference from the material undisputed facts that Wells Fargo knew, or reasonably should have known, that Bruce was using a portion of his Berlinger Trust distributions to meet his alimony obligation.  See Fla. Stat. § 736.0104.

Other than potentially the spendthrift provisions, discussed below, no provision in the Berlinger Trusts precluded Bruce from requesting, receiving, and spending trust distributions to pay his alimony obligations.  See supra §§ III.A-D (summarizing the relevant portions of the Berlinger Trusts).  Unless prohibited by the spendthrift provisions, making such distributions did not violate any of Wells Fargo's fiduciary duties.

A spendthrift provision is defined as "a term of a trust that restrains both voluntary and involuntary transfer of a beneficiary's interest." Fla. Stat. § 736.0103(19).  A spendthrift provision of a trust is clearly enforceable under Florida law.

> Florida law recognizes the validity of spendthrift trusts. See Waterbury v. Munn, 159 Fla. 754, 32 So.2d 603, 605 (1947). A spendthrift trust is a trust "created with a view of providing a fund for the maintenance of another, and at the same time securing it against his own improvidence or incapacity for self-protection." Croom v. Ocala Plumbing & Elec. Co., 62 Fla. 460, 57 So. 243, 244 (1911).

18

> When a trust includes a valid spendthrift provision, a beneficiary may not transfer his interest in the trust and a creditor or assignee of the beneficiary may not reach any interest or distribution from the trust until the beneficiary receives the interest or distribution. § 736.0502(3), Fla. Stat. (2009).

Miller v. Kresser, 34 So. 3d 172, 175 (Fla. 4th DCA 2010). See also Zlatkiss v. All America Team Concepts, LLC, 125 So. 3d 953, 955 (Fla. 5th DCA 2013).

It is undisputed that the Frederick Trust and the Rose Trust are discretionary in nature. (Doc. #359, ¶ 6; Doc. #379, ¶ 6.) Wells Fargo asserts, however, that the Rosa Trust is a mandatory trust. (Doc. #379, ¶¶6, 9.) The Rosa Trust states that the trustee "shall pay the income of such principal during the lifetime of [Bruce] . . . in such proportion as it determines . . . it is my intention that [the corporate trustee] shall not be charged with an abuse of its discretion should it pay all of the income to [Bruce]." (Doc. #93-1. pp. 1-2.) The Rosa Trust further states that distribution of principal shall be for Bruce's "comfortable maintenance." Because Wells Fargo was entitled to use its discretion when evaluating how often and in what amount distributions were to be made, the Court finds that the terms of the Rosa Trust effectively gave Wells Fargo discretionary authority to make distributions to Bruce. Therefore, the Court concludes that all Trusts at issue in this case are discretionary

trusts.   Fla. Stat. §§ 736.0506(1); 736.0504(1).   See also

Berlinger v. Casselberry, 133 So.3d 961, 964 n.4 (Fla. 2d DCA

2014); Inglis v. Casselberry, 137 So. 3d 389 (Fla. 2d DCA 2013).

### (1) Rosa Trust

The Rosa Trust contains a "Protective Provision" which

states: "That interests of the beneficiaries shall not be subject

to anticipation or to voluntary or involuntary alienation, and

this protection afforded by this paragraph shall be effective both

as to principal and income *until actual payment to the*

*beneficiary*." (Doc. #93-1, § 4(d) (emphasis added).)   Otherwise,

the Rosa Trust allowed distributions as summarized in § III.A of

this Opinion and Order.

The MSA was adopted by a state court final judgment and

required Bruce to directly pay Sue $16,000 per month in alimony.

(Doc. #359-1, § 3.5.) Nothing in the MSA, however, obligated Bruce

to pay Sue's alimony from distributions from the Rosa Trust, or

allowed Sue any rights to the Rosa Trust.   Nothing in the Rosa

Trust precludes a beneficiary from spending a distribution on

alimony after its receipt.   The undisputed facts establish that

Bruce did just that.   Bruce requested and received distributions,

and then spent part of the proceeds to satisfy his alimony

obligation.   This did not violate any provision of the Rosa Trust,

and Wells Fargo breached no duty as trustee by authorizing such

distributions with knowledge that part would be spent on alimony obligations.

### (2)   Frederick Family Trust

The Frederick Trust also contains a protective provision which states: "No beneficiary may sell, give, or otherwise transfer his or her interest in income or principal hereunder.  No person having a claim against a beneficiary may reach any such interest *before actual payment to the beneficiary*."  (Doc. #93-2, Art. XIV (emphasis added).)   Otherwise, the Frederick Trust allowed distributions as summarized in § III.B of this Opinion and Order.

Again, nothing in the MSA obligated Bruce to pay alimony to Sue from distributions from the Frederick Trust, or allowed Sue any rights to the Frederick Trust.  Nothing in the Frederick Trust precludes a beneficiary from spending a distribution on alimony after its receipt.  The undisputed facts establish that Bruce did just that.  Bruce requested and received distributions, and then spent part of the proceeds to satisfy his alimony obligation.  This did not violate any provision of the Frederick Trust, and Wells Fargo breached no duty as trustee by authorizing such distributions with knowledge that part would be spent on alimony obligations.

### (3)  Rose Family Trust

The Rose Trust contains a spendthrift clause that provides: "The interest of beneficiaries in principal and income shall not be subject to the claims of any creditor, any spouse for alimony

21

or support, or others, or to legal process, and may not be voluntarily or involuntarily transferred or encumbered." (Doc. #93-3, Art. XII(B).)   Otherwise, the Rose Trust allowed distributions as summarized in § III.D of this Opinion and Order.

Nothing in the MSA obligated Bruce to pay alimony to Sue from distributions from the Rose Trust, or allowed Sue any rights to the Rose Trust.  Nothing in the Rose Trust precludes a beneficiary from spending a distribution on alimony after its receipt.  The undisputed facts establish that Bruce did just that.  Bruce requested and received distributions, and then spent part of the proceeds to satisfy his alimony obligation.  This did not violate any provision of the Rose Trust, and Wells Fargo breached no duty as trustee by authorizing such distributions with knowledge that part would be spent on alimony obligations.

The Berlinger Trusts are consistent in providing the corporate trustee with broad authority to make discretionary distributions.  The Berlinger Trusts only limit the beneficiaries' ability to transfer their interests in the trusts and protect Trust assets from attachment by creditors *prior to distribution to a beneficiary.*  The MSA did not provide that Bruce's financial obligations were to be satisfied by Berlinger Trusts assets, and nothing in the MSA transferred Bruce's interests in the Berlinger Trusts or entitled Sue to any portion of such assets.  Nothing in the Berlinger Trust documents precluded Bruce from using his

distributions to pay existing debt in order to maintain his lifestyle, whether the debts be a mortgage or car payment, a grocery bill, or alimony.

The undisputed evidence establishes that Wells Fargo did not have a fiduciary duty to refrain from making distributions to Bruce which would be used to pay alimony, and that Wells Fargo breached no fiduciary duty as a corporate trustee when it made distributions to Bruce knowing Bruce would use a portion of the distributions for such purpose. Therefore, plaintiffs' motion for summary judgment as to the alimony portion of the claims is denied, and Wells Fargo's motion for summary judgment as to alimony portion of the claims is granted.

## C.   Acquisition Of Interest In Banyan Blvd. Property

The Second Amended Complaint alleges that in November-December, 2007, Wells Fargo approved the Rosa Trust's acquisition of a one-third interest in residential property on Banyan Blvd. for $2 million, when the property was valued at less than $700,000, and paid Sue the $2 million dollars due as her marital equitable distribution under the MSA on behalf of Bruce. (Doc. #93, ¶¶ 22-26.) Plaintiffs assert in Count I that this was a Trust distribution which constituted a breach of trust by Wells Fargo because it was made for the support and maintenance of Sue, a non-beneficiary, and not for the health, support or maintenance of the named beneficiaries. (Id. at ¶ 26.) Count II alleges that the

purchase of this non-income producing real estate violated Wells Fargo's duty to diversify and was not a prudent decision. (Id. at ¶¶ 35-38, 42.) Additionally, Count II also alleges a breach of fiduciary duty when Wells Fargo authorized payment of principal and/or income to non-beneficiary Sue. (Id. at ¶ 43.)

Certain relevant material facts are undisputed as to these portions of Counts I and II. Only the Rosa Trust was involved in the acquisition of the Banyan Blvd. Property. Wells Fargo authorized the Rosa Trust to acquire a one-third interest in the Banyan Blvd. Property in exchange for $2 million, which the Trust paid to Bruce. The $2 million paid to Bruce was not a distribution, but was an investment by the Rosa Trust in the Banyan Blvd. Property. Bruce used the $2 million to pay Sue three installments which constituted her marital equitable distribution as required under the MSA. The Rosa Trust allowed investment in real property, without an obligation to diversify, minimize risk, or produce income. Accordingly, summary judgment is entered in favor of Wells Fargo and against plaintiffs as to those portions of Counts I and II which allege (1) the $2 million investment in 550 Banyan Blvd. was a distribution to Bruce; (2) the $2 million payment authorized by Wells Fargo from the Rosa Trust was made to non-beneficiary Sue; and (3) the investment in the Banyan Blvd. Property violated Wells Fargo's duty to diversify.

Counts I and II also assert that the investment in the Banyan Blvd. Property was imprudent and/or made in bad faith. (Id. at ¶¶ 37-38, 42.) While a trustee may be excused from diversifying investments, as was done here in the trust documents, a trustee must nonetheless act in good faith. Fla. Stat. §§ 736.0105(2)(b), 736.1011(1)(a). A trustee also "has a duty to invest and manage investment assets as a prudent investor would considering the purposes, terms, distribution requirements, and other circumstances of the trust." Id. § 518.11(1)(a).

Material facts remain disputed as to whether the decision to invest in the Banyan Blvd. Property was imprudent and/or made in bad faith. The parties dispute whether Bruce was the sole owner of the property at the time the Rosa Trust paid him $2 million for the one-third interest. The parties continue to disagree as to the correct value of the Banyan Blvd. Property at the time of the purchase, and the exhibits and depositions on the issue conflict. (Doc. #366, ¶¶ 25-31; Doc. #383, 11-13.) The plaintiffs' expert witness, John Rodgers, provided a report asserting the investments into the Banyan Property were imprudent and prohibited under the terms of the Berlinger Trusts, while Wells Fargo's expert witness, William Ries, asserts positions to the contrary. (Doc. #160-1, p. 12; Doc. #383, ¶¶ 9, 11-13.) Accordingly, summary judgment for Wells Fargo must be denied as to this component of Counts I and II.

**D.    Capital Improvements To The Banyan Blvd. Property**

Counts I and II also assert that Wells Fargo used principal from the Rosa Trust to make capital improvements to the Banyan Blvd. Property totaling $167,615.[3]  The Second Amended Complaint is not clear whether plaintiffs consider the capital improvement payments to be distributions to Bruce or further investment by the Rosa Trust in the Banyan Blvd. Property.  The Rosa Trust financial records show that payments were made directly from the Rosa Trust to the entities making the capital improvements.  (Doc. # 365-19; Doc. #365-23.)  Thus, the capital improvement payments are properly understood as further investment by the Rosa Trust in the Banyan Blvd. Property.[4]  As with the Rosa Trust's initial investment in the Banyan Blvd. Property, plaintiffs allege that the capital improvements were not a prudent investment decision.[5]  As with the

---

[3] Wells Fargo agrees that there were payments made from the Rosa Trust for capital improvements to the Banyan Blvd. Property, but asserts that the total amount was $147,983.

[4] To the extent the capital improvement payments are properly construed as distributions to Bruce, such distributions did not breach Wells Fargo's fiduciary duty.  As with the distributions used by Bruce to pay alimony, Wells Fargo was entitled to use its discretion when evaluating how often and in what amount distributions were to be made, and the Rosa Trust's spendthrift provision did not bar such distributions.  See supra §§ III.A, IV.B (summarizing the relevant portions of the Rosa Trust).

[5] Wells Fargo argues that plaintiffs conceded in deposition testimony that the capital improvements were prudent.  However, Heather and Stacey testified only that they did not object to the capital improvements at the time they were made, and Brian testified only that "it would be smart to make sure that the . . .

acquisitions, material facts remain disputed as to whether the decision to invest in capital improvements was prudent. The plaintiffs' expert witness contends the investments into the Banyan Property were imprudent, while Wells Fargo's expert witness argues to the contrary. (Doc. #160-1, p. 12; Doc. #383, ¶¶ 9, 11-13.) Accordingly, summary judgment for Wells Fargo must be denied as to this component of Counts I and II.

**E.   Investment In Mutual Funds**

Count II also alleges that Wells Fargo breached its fiduciary duty by investing Berlinger Trust assets in Wells Fargo's in-house propriety mutual funds, which charged additional management fees above and beyond those which Wells Fargo was receiving as trustee. (Doc. #93, ¶¶ 40, 44.) Plaintiffs allege that these investments were imprudent and/or made in bad faith because Wells Fargo could have avoided those additional fees by investing in other income-producing assets. Wells Fargo is entitled to summary judgment on this portion of Count II because a reasonable jury could not conclude that Wells Fargo authorized these investments imprudently or in bad faith.

---

. property doesn't become decrepit." (Doc. #383-6, pp. 105-07; Doc. #383-7, pp. 103-05; Doc. #383-8, pp. 218-25.) The Court concludes that these statements are insufficient to demonstrate that plaintiffs concede that the particular capital improvements in question were prudent, especially in light of their decision to proffer expert testimony to the contrary.

The Berlinger trusts grant the corporate trustee broad discretion concerning investments, _see_ _supra_ §§ III.A-D, and plaintiffs do not contend that Wells Fargo was prohibited from investing Berlinger Trust assets in mutual funds generally. Instead, plaintiffs allege that these particular mutual funds were imprudent and/or bad-faith investments because they carried management fees which could have been avoided had Wells Fargo chosen to invest elsewhere. Plaintiffs' sole evidence of imprudence and/or bad faith is the fact that investing in proprietary mutual funds meant that the management fees were paid to a Wells Fargo entity. However, plaintiffs point to no evidence suggesting that the proprietary mutual fund management fees were greater than those for non-proprietary funds. Indeed, neither plaintiffs nor their expert identify a single alternative investment. Viewing the record in the light mist favorable to plaintiffs, the Court concludes that a jury could not reasonably conclude that Wells Fargo's decision to invest Berlinger Trust assets in proprietary mutual funds was imprudent or made in bad faith. Accordingly, Wells Fargo is entitled to summary judgment as to this portion of Count II.

**F.   Plaintiffs' Releases In Connection With The MSA**

As set forth above, Wells Fargo is entitled to summary judgment as to the portions of Counts I and II which allege (1) Wells Fargo had a fiduciary duty to refrain from making

distributions to Bruce which would be used to pay alimony; (2) the $2 million investment in 550 Banyan Blvd. was a distribution to Bruce; (3) the $2 million payment authorized by Wells Fargo from the Rosa Trust was made to non-beneficiary Sue; (4) the investment in the Banyan Blvd. Property violated Wells Fargo's duty to diversify; and (5) Wells Fargo breached its fiduciary duty by investing trust assets in in-house propriety mutual funds.  What remains is plaintiffs' claim that the Rosa Trust's investment in the Banyan Blvd. Property (and capital improvements made to the property) was imprudent and/or made in bad faith.  Wells Fargo argues that Releases plaintiffs executed in connection with the MSA bar these claims.

It is undisputed that each plaintiff signed a Receipt, Release, Refunding Agreement, Waiver of Audit, and Indemnification (the Release) in connection with the MSA.  (Docs. ##365-29, 365-30, 365-31.)  In the Release, plaintiffs agreed "to execute any documents or join in any and all actions necessary to accomplish the terms of the [MSA]."  (Id. at ¶ 6.)  According to Wells Fargo, the Releases preclude plaintiffs from challenging the propriety of the investment in the Banyan Blvd. Property because plaintiffs knew that the proceeds of that investment would be used by Bruce to satisfy his MSA obligations to Sue and, therefore, any challenge to the investment would contravene plaintiffs' obligation under

the Release to cooperate in "accomplish[ing] the terms of the [MSA]." The Court disagrees.

As explained in § IV.B of this Opinion and Order, nothing in the MSA obligated Bruce to sell a one-third interest in the Banyan Blvd. Property.  Nor did the MSA require Bruce to use proceeds from such a sale to satisfy his MSA obligations to Sue.  Likewise, the MSA does not address the use of Berlinger Trust assets for capital improvements to the Banyan Blvd. Property.  Therefore, a finding that the investment in the Banyan Blvd. Property was imprudent or made in bad faith (or that Bruce was not authorized to sell an interest in the property because he was not the sole owner) would not impact Bruce's obligations under the MSA.  At most, such a result would impact a source of funds used by Bruce to satisfy his MSA obligations (the $2 million Bruce received from the Rosa Trust for the one-third share).  Because the MSA did not require Bruce to use funds from the investment in the Banyan Blvd. Property to satisfy his obligations to Sue, the Court concludes that plaintiffs did not waive their right to challenge the propriety of the investment simply by promising in a general fashion to cooperate in accomplishing the terms of the MSA.  See Air Products & Chemicals, Inc. v. Louisiana Land & Exploration Co., 867 F.2d 1376, 1379 (11th Cir. 1989) ("Waiver requires the existence at the time of the alleged waiver of a right which may be waived, actual or constructive knowledge of that right, *and the*

_intention to relinquish that right_.") (emphasis added). Accordingly, the Releases do not entitle Wells Fargo to summary judgment on plaintiffs' remaining claims.

**V.**

In its Third Party Complaint, Wells Fargo asserts claims of contribution and unjust enrichment. All parties move for summary judgment on these claims.

**A.   Count I:  Contribution**

Wells Fargo brings a contingent claim for contribution against Bruce. _Attorneys' Title Ins. Fund, Inc. v. Punta Gorda Isles, Inc._, 547 So. 2d 1250, 1251 (Fla. 2d DCA 1989) ("a claim for contribution can be brought as a cross-claim or a third party claim, on a contingent basis, prior to the payment.") Wells Fargo asserts that Bruce, as co-trustee and/or trust beneficiary, is liable under Fla. Stat. § 768.31 for contribution for the full amount of any liability that may be imposed should plaintiffs prevail on their claims against Wells Fargo. (Doc. #363, pp. 6-10.) Wells Fargo asserts that it is undisputed Bruce was co-trustee and/or trust beneficiary, was a beneficiary who requested and received the distributions now claimed to be improper, and is therefore jointly liable to plaintiffs.

Bruce responds that he cannot be held liable for contribution because the language of the Berlinger Trusts give the power to make distributions solely to the corporate trustee. Because Bruce

31

cannot be held liable to the plaintiffs, he argues he cannot be liable for contribution to Wells Fargo.[6]

Contribution is exclusively a statutory remedy meant to apportion the responsibility to pay innocent injured third parties between or among those causing the injury. Fla. Stat. § 768.31; Nesbitt v. Auto-Owners Ins. Co., 390 So. 2d 1209 (Fla. 5th DCA 1980). To establish a claim for contribution, the claimant must allege a common liability to the injured party. Horowitz v. Laske, 855 So. 2d 169, 173-74 (Fla. 5th DCA 2003). Under Florida law, a co-trustee is entitled to contribution from the other co-trustee only if both co-trustees are liable to the beneficiaries. Fla. Stat. § 736.1002(2) ("if more than one person, including a trustee or trustees, is liable to the beneficiaries for a breach of trust, each liable person is entitled to pro rata contribution from the other person or persons"). See also Restatement (Second) of Trusts § 258(1) ("where two trustees are liable to the beneficiary for a breach of trust, each of them is entitled to contribution from the other"). Thus, in order to hold Bruce liable for contribution, Wells Fargo must show that Bruce is jointly liable to plaintiffs for breach of trust.

---

[6]All parties rely on Florida law in their moving papers. Even if Pennsylvania law governed during a portion of the time, as Bruce has previously asserted, the results would be no different.

It is undisputed that Bruce was the primary beneficiary and co-trustee of the Berlinger Trusts; that Bruce requested Wells Fargo to authorize the Rosa Trust to invest $2 million dollars in the Banyan Blvd. Property; that Bruce received the $2 million from Wells Fargo, and thereafter paid Sue $2 million as her marital equitable distribution; that Bruce requested and received funds from the Berlinger Trusts which were used for alimony; that Rosa Trust assets were used to make capital improvements on the Banyan Blvd. Property; and that it is these distributions and investments which plaintiffs now assert were improper and for which they seek to impose liability on Wells Fargo.

The basis of Bruce's motion for summary judgment and his opposition to Wells Fargo's motion for summary judgment rests on the assertion that Bruce did not have the power to make distributions or investment decisions for the Trusts. The Court will assume for purposes of these motions that Bruce is factually correct as to his lack of power to make distributions or investment decisions under the Trusts. That, however, does not necessarily preclude summary judgment.

Florida Statute § 736.0703(9) discusses the liability of co-trustees when a trust allocates certain powers among the trustees.

> If the terms of a trust provide for the appointment of more than one trustee but confer upon one or more of the trustees, to the exclusion of the others, the power to direct or prevent specified actions of the

> trustees, the excluded trustees shall act in
> accordance with the exercise of the power.
> Except in cases of willful misconduct on the
> part of the excluded trustee, an excluded
> trustee is not liable, individually or as a
> fiduciary, for any consequence that results
> from compliance with the exercise of the
> power.

Fla. Stat. § 736.0703(9).

Assuming that plaintiffs prevail on their claim that the Banyan Blvd. Property investments were improper, the undisputed facts establish willful misconduct and joint participation by Bruce. Bruce was the primary beneficiary and co-trustee who made specific requests for distributions and investments which plaintiffs allege were improper, received the distributions and benefitted from the investments, and used the funds as he saw fit. Since Bruce was literally the prime beneficiary of the distributions and investments, it would be inequitable to allow him to retain these benefits which he solicited from the Berlinger Trusts and which were approved by the corporate trustee. If Wells Fargo is liable for the distributions or investments, Bruce is liable for contribution. Summary judgment in favor of Wells Fargo is granted. Bruce's motion for summary judgment is denied.

**B.   Count II:  Unjust Enrichment-Bruce**

Count II of the Third Party Complaint alleges Bruce was unjustly enriched when certain benefits were conferred on him by Wells Fargo. "A claim for unjust enrichment has three elements:

(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." Virgilio v. Ryland Grp., 680 F.3d 1329, 1337 (11th Cir. 2012); Fla. Power Corp. v. City of Winter Park, 887 So. 2d. 1237, 1241 n.2 (Fla. 2004).

Wells Fargo seeks summary judgment against Bruce alleging he voluntarily accepted and retained benefits conferred on him through the distributions and investments made by Wells Fargo. Wells Fargo asserts that should plaintiffs prevail in this action, Wells Fargo will be required to pay back the monies it paid to Bruce, which Bruce used to satisfy his obligations to Sue. Wells Fargo may also be required to reimburse the Trusts for the investment in capital improvements to the Banyan Blvd. Property. Wells Fargo argues it would be inequitable for Bruce (and Sue) to retain the benefit of those funds should the distributions or investments be deemed improper.

The undisputed facts establish all three elements of unjust enrichment if Wells Fargo is held liable for the distributions. The Court rejects Bruce's argument that since the benefits were conferred on him by the Berlinger Trusts, not Wells Fargo, it is the Berlinger Trusts that have a cause of action for unjust enrichment, not Wells Fargo. This Court has already found that

"if plaintiffs succeed, Wells Fargo will be held liable for the distributions of the funds, not the Trusts." (Doc. #196, p. 7.) Therefore, if Wells Fargo is found liable to plaintiffs, it is Wells Fargo that will have conferred the benefit on Bruce.

The Court also rejects Bruce's argument that he did not retain a benefit from Wells Fargo. Bruce voluntarily solicited, accepted, retained, and spent the funds approved by Wells Fargo as distributions from the Berlinger Trusts. Bruce also voluntarily solicited, accepted, retained, and enjoyed the benefits of the Berlinger Trusts' investments in the Banyan Blvd. Property. It would be inequitable for Bruce to retain the funds and benefits, spend them as he chooses, and have Wells Fargo liable to reimburse the Berlinger Trusts. Therefore, the Court finds there are no disputed issues of material fact and Wells Fargo is entitled to summary judgment as to the unjust enrichment claim in Count II if Wells Fargo is found liable to plaintiffs in the underlying case.

## C.   Count III:  Unjust Enrichment-Sue

Count III of the Third Party Complaint alleges Sue was unjustly enriched when she voluntarily accepted and retained benefits stemming from Wells Fargo's alleged improper distributions of trust assets to Bruce. (Doc. #60, p. 7.) The elements for a claim of unjust enrichment are discussed above.

Wells Fargo seeks summary judgment against Sue on Count III, alleging Sue voluntarily accepted and retained benefits conferred

on her through Wells Fargo's distributions to Bruce.  Wells Fargo asserts that should plaintiffs prevail in this action, Wells Fargo will be required to repay monies it had paid to Bruce which were used to satisfy his obligations to Sue.  Wells Fargo argues it would be inequitable for Sue to retain those funds at Wells Fargo's expense should these distributions be deemed improper.

Sue asserts that she is entitled to summary judgment as to Count III in the Third Party Complaint because: (1) it fails to state a claim for relief ; (2) the claim is barred by the statute of limitations; (3) Wells Fargo has unclean hands; (4) Sue detrimentally relied on the funds distributed by irrevocably changing her position; (5) Sue gave fair consideration for the benefits conferred; (6) there is no privity between Wells Fargo and Sue; and (7) the claim in barred by the doctrine of laches. (Doc. #362.)

Sue first claims that Wells Fargo must prove that it directly conferred a benefit on her in order to allege a claim for unjust enrichment.  Specifically, Sue alleges that Bruce is the one who conferred a benefit on her, not Wells Fargo or the Berlinger Trusts, and thus Wells Fargo's unjust enrichment claim fails as to her even if Wells Fargo is found liable to plaintiffs.  Wells Fargo does not dispute the fact that the benefits Sue received first passed through Bruce, but asserts that it would nonetheless be

inequitable for Sue to retain the funds to the detriment of Wells Fargo.

Florida law is clear that a claim of unjust enrichment requires proof of a direct benefit, and that an indirect benefit will not suffice. Virgilio v. Ryland Group, Inc., 680 F.3d 1329, 1337 (11th Cir. 2012); Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank, 667 So. 2d 876, 879 (Fla. 3d DCA 1996). It is clear from the record that Wells Fargo did not make any payments from the Berlinger Trusts directly to Sue. It is undisputed that Wells Fargo made payments to Bruce, who used those payments to satisfy Bruce's obligations to Sue under the MSA. Therefore, there is no viable unjust enrichment claim as to Sue, and summary judgment is granted as to Sue on Count III. The Court need not discuss the other issues raised by Sue as to this count.

Accordingly, it is now

**ORDERED:**

1.   Plaintiffs' Motion for Summary Judgment (Doc. #360) is **DENIED.**

2.   Defendant Wells Fargo Bank, N.A.'s Motion for Final Summary Judgment against Plaintiffs (Doc. #364) is **GRANTED IN PART AND DENIED IN PART.** The motion is granted as to the allegations in Counts I and II of the Second Amended Complaint (Doc. #93) that (i) Wells Fargo had a fiduciary duty to refrain from making distributions to Bruce D. Berlinger which would be used to pay

alimony; (ii) the $2 million investment in 550 Banyan Blvd. was a distribution to Bruce D. Berlinger; (iii) the $2 million payment authorized by Wells Fargo from the Rosa Trust was made to non-beneficiary Sue Casselberry; (iv) the investment in the Banyan Blvd. Property violated Wells Fargo's duty to diversify; and (v) Wells Fargo breached its fiduciary duty by investing trust assets in in-house propriety mutual funds.  The motion is otherwise **DENIED** as to the prudence and good faith of the investment in and capital improvements to the property located at 550 Banyan Blvd., Naples, Florida.

3.    Third Party Plaintiff, Wells Fargo Bank N.A.'s Motion for Final Summary Judgment against Third Party Defendants Bruce D. Berlinger and Sue Casselberry (Doc. #363) is **GRANTED in part and DENIED in part.**  The motion is **GRANTED** as to Counts I and II as to Bruce D. Berlinger, but **DENIED** as to Count III as to Sue Casselberry.

4.    Third Party Defendant, Bruce D. Berlinger's Motion for Summary Judgment (Doc. #358) is **DENIED.**

5.    Third Party Defendant, Sue Casselberry's Motion for Summary Judgment (Doc. #362) is **GRANTED.**

6.    The Clerk shall defer the entry of final judgment pending the disposition of plaintiffs' remaining claims.

7.    The pretrial deadlines and trial term set forth in the Court's August 25, 2015 Order (Doc. #464) will be discussed, and

modified if necessary, at the October 19, 2015 Status Conference before the undersigned.

**DONE AND ORDERED** at Fort Myers, Florida, this __16th__ day of October, 2015.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE


Copies: Counsel of record